In re Kenneth John GRIZAFFI, Debtor.

Bankruptcy No. 82 B 01990 M.

United States Bankruptcy Court,
D. Colorado.

Sept. 15, 1982.

---

138

Paul S. Salas, Fort Collins, Colo., Trustee.

Douglas A. Wolkin, Fort Collins, Colo., for First Interstate Bank.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSION OF LAW UPON THE APPLICATION FOR ORDER DIRECTING TRUSTEE TO ABANDON PROPERTY FILED BY FIRST INTERSTATE BANK OF FORT COLLINS

JOHN F. McGRATH, Bankruptcy Judge.

This matter came before the Court upon the Application of the First Interstate Bank of Fort Collins that the Trustee be ordered to abandon certain secured collateral held by the Bank. The Trustee has objected to a previous Order entered on July 22, 1982, granting such abandonment and after notice and hearing on August 10, 1982, this Court left in effect the Order to the Trustee to abandon a 1980 Yamaha, a 1981 Yamaha and three cash registers and vacated the abandonment Order with regard to the 1980 Jeep Wagoneer. The matter of the cross-collateralization against the 1980 Jeep was taken under advisement.

The issue involved is whether the Bank may add together all sums owed on notes on the four items of collateral and under a cross-collateral clause in the notes, apply the total amount against the 1980 Jeep Wagoneer.

The facts with regard to the four transactions involved are as follows:

| Date of Note | Collateral | Current Value as Agreed by Parties | Currently Owed Not Including Interest & Costs |
| --- | --- | --- | --- |
| 5/25/80 | 1980 Yamaha | $1730.00 | $1627.66 |
| 9/15/80 | 1980 Jeep Wagoneer | 5700.00 | 3074.16 |
| 11/18/80 | 3 cash registers | 2000.00 | 3204.18 |
| 6/16/81 | 1981 Yamaha | 2950.00 | 2883.41 |

There is no question that the value of the collateral is less than the amount owed on each of these items of collateral, with the exception of the 1980 Jeep Wagoneer.

The First Interstate Bank of Fort Collins holds promissory notes and signed security agreements on the above four items and has appropriately perfected its security interests. The Bank seeks to lump together all sums owed under a cross-collateral clause in the notes, and apply the total against the 1980 Jeep.

On the front of the printed form the Bank used for Mr. Grizaffi's Promissory Note there is a box labeled "Security," contents as follows:

( ) None
To protect the Bank if I default on this or any other debt to it, I give the Bank what is known as a security interest in any account or other property of mine coming into its possession.

(x) In addition, I give the Bank a security interest in my _____
1980 Jeep Wagoneer
SN # JOE15NN048763

and have executed a security agreement on this date that fully describes this property. The security agreement secures not only this, but any other debt which I owe the Bank, including future debts, and covers property (subject to the limitation of the UCC) which I might not now have, but may acquire in the future.

The second box has been checked and the 1980 Jeep Wagoneer has been typed in. The amount financed was listed at $5935.38, making a total of $7494.48 with finance charges. The total owed presently on this 1980 Jeep is $3074.16.

The Bank's Security Agreement form has "1980 Jeep Wagoneer SN # JOE15NNO48763" typed in the space for collateral. In small typed letters below the form states

To secure payment of the indebtedness evidenced by __a__ certain promissory note _____ of even date herewith, in the amount of __$7494.84__

( ) and any other indebtedness, present or future, of the debtor, payable to the secured party or order.

(x) payable to the Secured Party, or order, repayable as follows:

The first box is *not* checked. After the above words the monthly installment plan is typed in.

When we find ambiguity in forms such as found here between the note and the security agreement, the printed form is to be construed against the Maker. *Mohler v. Buena Vista Bank and Trust,* 42 Colo. App. 4, 588 P.2d 894 (1978). Further, a clause attempting to draw in as security all other and future debts and all present and future property, which is called a "dragnet" clause, is to be construed strictly against the party drafting the clause. *Mohler,* supra.

*Colo.Rev.Stat.* § 4–9–204(5) (1973) provides that "Obligations covered by a Security Agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment." It should be pointed out that in this instance the Security Agreement itself did not have the future advance clause checked.

When considering future advance "dragnet" clauses like the one contained in the Bank's promissory note, the intention of the parties must be determined. The Court should look to what the parties reasonably contemplated as the obligation at the time of the agreement. The Bank note used in Mr. Grizaffi's transaction is very similar to one used in *In re Bason,* 33 U.C.C. 1121 (E.D.Tenn.1982). The Court there said:

In connection with the automobile loan the bank officer used a "form" agreement. While he knew the contents of the agreement, the bank officer gave no thought to the future advance clause. He did not discuss the clause with the debtor. The debtor had no actual knowledge of the clause and had no intention for the automobile to secure other loans. p. 1122.

The bank officer for the First Interstate Bank testified that he did not remember discussing this "dragnet" clause with Mr. Grizaffi. There is no evidence that Mr. Grizaffi had any actual knowledge of this clause nor that he had any intention that the 1980 Jeep secure other loans.

Future advance clauses on printed forms are not to secure later purchases unless it is clear the parties contemplated this at the time the agreement was made. The true intent of the parties is the sole controlling factor. *Kimbell Foods, Inc. v. Republic Nat'l. Bank of Dallas,* 401 F.Supp. 316 (N.D.Texas 1975).

The Uniform Commercial Code was designed to promote stability and predictability in commercial transactions, but it

was not intended to legitimatize "dragnet" clauses that were struck down under pre-Code law.

A lender who attempts to bring with the Security Agreement a claim against a Debtor so unrelated to the course of financing that the consent of the Debtor can not be inferred has exceeded the legitimate level of the future advance clause and can not claim the protection of 9–204(5). *Pellagrini v. National Bank of Washington,* 28 U.C.C.Rep. 209, 210, (Dist. of Col.Sup.Ct.1980).

Even though "floating liens" are sanctioned by the U.C.C. under 9–204(5) the secured party does not obtain a security interest in collateral for contingent contractual liabilities not of the same nature. *John Miller Supply Co., Inc. v. Western State Bank,* 10 U.C.C.Rep. 1329 (Wis.Sup.Ct.1972), 55 Wis.2d 385, 199 N.W.2d 161.

█ All four of Mr. Grizaffi's transactions were unrelated. Three of the items were for separate personal use and one transaction, the three cash registers, was for a business use—clearly not a contractual liability of the same nature.

The parties must not have intended these four transactions to be cross-collateral for one another. Mr. Grizaffi and the Bank entered into four totally separate transactions on four separate dates. Each transaction had its own promissory note and security agreement. The payment schedule for each reflected only repayment of the amount advanced on the single transaction. The balances owed on each of these transactions is listed as a separate amount. No evidence has been introduced to show that the intent of the parties at the time of the transaction was to have the other items included as collateral on the 1980 Jeep.

█ There is another reason why the Bank should not be able to enforce the cross-collateral clause against the 1980 Jeep Wagoneer. Colorado is a title state. Under *Colo.Rev.Stat.* § 42–6–119 and 120 (1973) to perfect a security interest in a vehicle requiring a certificate of title the mortgage must be shown on the face of the title. The Bank recorded on the 1980 Jeep Wagoneer title only the amount of the loan made specifically on the Jeep. Allowing a mortgage to attach having more value than the amount noted on the certificate of title would negate the purpose of this statute, which is to make the certificate conclusive as to the rights of the parties with respect to notice of prior encumbrances. *Loye v. Denver United States National Bank,* 341 F.2d 402 (10th Cir. 1965).

Therefore, this Court must conclude that:

(a) Ambiguities such as those found here between the Security Agreement and the Promissory note should be construed against the Maker and such "dragnet" provisions also should be construed against the Drawer.

(b) There has been no showing that the intent of the parties, which is controlling, was to include all the collateral from these four notes to be put upon the 1980 Jeep Wagoneer.

(c) Under these conditions *Colo.Rev.Stat.* § 4–9–204(5) (1973), which allows future advance clauses, does not protect this "dragnet" clause.

(d) Further the amount of the mortgage noted on the face of the certificate of title to the 1980 Jeep Wagoneer is only the amount loaned on this collateral and therefore that is the amount of the valid lien on this motor vehicle. *Colo.Rev.Stat.* § 42–6–120 (1973).

Under the provisions of 11 U.S.C. § 554(b) on request of a party in interest, and after notice and hearing, the Court may Order the trustee to abandon any property of the estate that is burdensome or of inconsequential value to the estate.

THEREFORE IT IS HEREBY ORDERED that the three items; the 1980 Yamaha, the 1981 Yamaha, and the three cash registers, be abandoned as having inconsequential value to this estate, as was originally ordered on July 22, 1982. The same Order granting abandonment to the 1980 Jeep Wagoneer is hereby vacated because its value is greater than the security interest against it held by the First Interstate Bank of Fort Collins.