SOPHIE DIAMOND, Plaintiff, *v.* TAU HOLDING CORPORATION and Others, Defendants.

Supreme Court, New York County, December 21, 1927.

Mortgages — foreclosure — priority — mortgage covers three parcels on one of which building was erected after mortgage — building financing left prior mortgages for $200,000 — lease of building for long term provided for deposit of $25,000 at interest by lessee — plaintiff without knowledge of holder of fourth mortgage subordinated her mortgage to lien of lease — lease materially increased value of premises — holder of fourth mortgage not prejudiced and is not entitled to have plaintiff's priority reduced $25,000 with interest for period of lease — money which said defendant paid on lien prior to plaintiff is entitled to priority over mortgage of plaintiff.

The mortgage which is being foreclosed in this action covers three parcels of real property on one of which a building was erected after the mortgage was given. The mortgages arising out of building financing, aggregating $200,000, were given priority over plaintiff's mortgage and a fourth mortgage held by one of the defendants. The lessee of the building, who was required to make a deposit of $25,000 as security for the performance of the long term lease and on which the owner agreed to pay five per cent interest, which deposit was to be a lien

against the premises, refused to execute the lease unless prior liens did not exceed $225,000. In order to meet this the plaintiff subordinated her mortgage to the lien of the lease without the knowledge of the holder of the fourth mortgage who contends that such action prejudiced his rights and that the lien of plaintiff to the extent of $25,000 with interest at five per cent for the term of the lease should be subordinated to said defendant's fourth mortgage. As a matter of fact the lease has materially benefited the property and increased its value and, therefore, the security of the fourth mortgagee. If on a sale there is a deficiency then the holder of said mortgage will still have a lien on the lease for his protection. The holder of the fourth mortgage having paid interest and installments on mortgages prior to plaintiff's is entitled to have a lien for that amount in priority to plaintiff's lien.

ACTION to foreclose a mortgage.

*Sidney R. Diamond* [*Louis L. Tetelman* and *Nathan Mandel* of counsel], for the plaintiff.

*Gleason, McLanahan, Merritt & Ingraham* [*Abraham I. Elkus* and *Burgess Osterhout* of counsel], for the defendant Robert.

LEVY, J. This is an action to foreclose a mortgage in the sum of $102,479, covering the premises formerly occupied by the Ringler Brewery on East Ninety-first and East Ninety-second streets, borough of Manhattan. The lien of the mortgage embraces three contiguous parcels, referred to as A, B and C. In so far as parcels A and B are concerned, there is no defense; but as regards parcel C, one of the defendants, Robert, a subsequent lienor, has interposed a plea of priority. He is a holder of two mortgages consolidated into one, in the sum of $11,000, of later date than plaintiff's, and his claim of prior equity arises out of these facts:

The defendant Tau Holding Corporation erected a four-story garage upon parcel C at a cost of $160,000. This was on the site of the former brewery stable, and was undoubtedly an improvement intended to make the property substantially income-producing. As a result of the financing of the construction, the property became incumbered with two mortgages, aggregating $210,000, which were made prior in lien to those of the plaintiff and the defendant. As the owner of the fee, the Tau Holding Corporation, the directors of which were not practical garage people, leased the property to Mohican Garage, Inc., by a certain indenture dated the 30th day of August, 1926, for a term of twenty-eight years, at a graduated rental, ranging from $30,000 to $45,000 per annum. The lessee was also to pay one-half the real estate taxes and all water rates and to maintain the property in repair; $25,000 was deposited by it as security for the faithful performance of the lease, and this sum was made a lien, but expressly subordinate to mortgages then a lien of record or thereafter to be placed on the premises, in an amount not exceeding $225,000.

As the existing mortgages aggregated considerably over that amount, and the lessee was not willing to jeopardize its security and its lease by subordinating its equity to an amount in excess of $225,000, it became necessary for the plaintiff to subordinate her mortgage to the lien of the lessee. This subordination was made without the knowledge or the consent of the defendant Robert, a fourth mortgagee, and is, of course, not binding upon him, and in no way affects the priority of his lien over the interest of the lessee. His grievance, however, is that the plaintiff, by consenting to subordinate her mortgage to the rights of the lessee, will cause the sale of the property subject to an existing lease, which carries with it the liability on the part of the purchaser to repay to the lessee the security of $25,000 at the end of the term, and to the obligation of paying five per cent interest on that sum. He thus argues that the plaintiff, as a senior mortgagee, has placed an undue burden on the property, which will to that extent decrease the sales price anticipated. Consequently he demands that plaintiff's lien, as to priority, be reduced by the sum of $25,000, together with twenty-eight years' interest at five per cent.

The defendant's contention is based upon the principle that a senior mortgagee may not prejudice the rights of a junior one, or impair the security of the latter without his privity or consent. A common illustration of the application of this doctrine may be said to be found in those situations where a senior mortgagee, with his incumbrance on two or more parcels of land, knowing of the junior incumbrances, covering but one, intentionally yields up a security which in equity he is bound to exhaust before resorting to the other security, which stands as the only protection of the junior incumbrancer. There it would appear that the junior mortgagee acquires a superior equity, and in such cases it is held that the senior mortgagee will not be permitted to enforce his security against the premises common to both mortgages, unless he will first deduct the value of the land thus released. (*Turner* v. *Ridge Heights Land Co.*, 92 N. J. Eq. 64.) This rule is founded upon the doctrine of marshaling assets, which is explained in *Ingalls* v. *Morgan* (10 N. Y. 178, 186) as follows: " The facts present a case where the creditor has a lien upon two funds for the security of his debt, and another party has an interest in one only of these funds, without any right to resort to the other. In such a case, equity will compel the creditor to take his satisfaction out of the fund upon which he alone has an interest, so that both parties may, if possible, escape without injury."

Another instance where a senior mortgagee must in this wise respond is where he commits acts of waste, or permits the mortgagor

to do so, by which the security of the junior mortgagee becomes impaired. (*Whorton* v. *Webster*, 56 Wis. 356.)

The situation at bar is different and somewhat unusual, and whether the acts complained of involve an impairment of the security of the defendant Robert requires a more extended consideration of the effect of the present foreclosure proceedings. The lessee has not been made a party to the action. It was not a necessary party, because its lien had become a prior one by plaintiff's very act of subordination. The effect of the sale of the premises will be to leave the terms and obligations of the lease unaffected by the foreclosure, the lessee becoming the tenant of the purchaser without the necessity of attornment. (*Commonwealth Mortgage Co.* v. *De Waltoff*, 135 App. Div. 33.) As is further stated there (at p. 35): " But the purchaser, succeeding to all the title and rights of the original landlord, becomes the landlord by operation of law, with all the rights and remedies of the original landlord. The conventional relation of landlord and tenant is thus created, and a sufficient foundation exists for the institution of summary proceedings for the recovery of possession if the tenant refuses to abide by the covenants of his lease." (See, also, Real Prop. Law, § 223.)

If the defendant named instituted a similar action in foreclosure, the lessee's interest being subordinate to that of such defendant, it would be a necessary party to the proceedings, and the property would then be sold free of the lease. In that contingency, the plaintiff, in the event that the proceeds did not reimburse the defendant, would have to bear the sole burden of making good the amount of security deposited, as the latter would be unaffected by the subordination agreement of the plaintiff to such lessee.

But the situation here is otherwise. Defendant has not chosen to foreclose his lien, and it is not an unwarranted inference that he did not elect to do so, because the lease is of decided advantage to the premises instead of a positive hindrance. As a matter of fact, two real estate experts have testified that the lease enhances the value of the property very considerably, and more than outweighs the disadvantage created by the circumstance that the purchaser ultimately will be obliged to reimburse the lessee for its deposit plus interest. It cannot be seriously questioned that, when plaintiff subordinated her mortgage, she did so in order to substantially improve the premises for better security; but it must be recognized that incidentally such benefit accrued to the defendant as subsequent lienor as well. His lien remains superior to that of the lease, and the court is not at all persuaded that the act of the plaintiff has in any wise actually impaired his security or in any manner injured him.

29

From another point of view this is equally evident. Let us assume that defendant is correct in his contention that the lease is highly profitable to the lessee, and consequently not of the greatest advantage to the property. If this be true, it would seem to be to the best interest of the lessee to protect it upon a foreclosure, so as not to lose either the security deposited, or the benefits of what is concededly a very profitable lease; and, if such lessee does not see fit to do so, surely its pledgee, who is said to have advanced $26,500, apparently on the strength of the value of the lease, would be more than sufficiently interested in protecting it against defendant's mortgage debt, amounting to but $11,000.

In any event, if neither of the two determined to so protect such interest, a lease said to be advantageous to the tenant and running for twenty-eight years would certainly be marketable with profit, especially as it carries with it the right to the return of the security. On the other hand, if, as seems to fully accord with the evidence, the lease is of great advantage to the property, in view of the fact that it yields a net return of probably ten per cent, the security has certainly not been impaired, but, on the contrary, enchanced, and purchasers bidding on the foreclosure will doubtlessly do so with an eye open to this. Such advantage will more than balance any obligation to pay annual interest on the deposit or to return it at the expiration of the term. In either event, the defendant cannot be adversely affected by the result. If the property upon a sale brings sufficient to cover his lien, there will be no ground for complaint.

If there is any deficiency, the lien will still subsist against the lease; for, while the foreclosure sale bars him from any claim against the owner's reversion, it does not destroy his mortgage. (Barnard v. Onderdonk, 98 N. Y. 158.) As must appear obvious, the lease still remains as collateral security, and defendant may have recourse against it, if it becomes necessary by reason of a deficiency upon this foreclosure sale. This becomes more evident from a consideration of the extent of defendant's lien. Upon the making of the lease, his mortgage security consisted of the owner's reversion and the leasehold. After the sale, his interest in the reversion as such will be foreclosed, except to the extent of his claim in surplus-money proceedings; but his right to resort against the remainder of his security, the leasehold, will remain unimpaired.

One claim of defendant, raised by his supplemental answer, remains to be considered. In July and August, 1927, he paid sums aggregating $8,500 in the form of interest and installments on mortgages which are prior to plaintiff's and he asks that he be subrogated to the rights flowing from this situation to the extent of

such payments.   Plaintiff opposes the plea on the ground that they were made in virtue of the right defendant had under his mortgage, and that his only recourse is to add the amount so paid to his lien. The argument of the plaintiff in this connection is somewhat specious.   In *Hawkins* v. *Maxwell* (156 App. Div. 31, 34; affd., 215 N. Y. 673) the court in referring to a similar situation held that "A junior incumbrancer was entitled to pay the interest due upon the prior mortgage for his protection, and, having done so, to be treated as the assignee of the claim.   (*Twombly* v. *Cassidy*, 82 N. Y. 155; *Patterson* v. *Birdsall*, 64 id. 294.) "

The case of *Magilton* v. *Holbert* (52 Hun, 444) is not at all in conflict with this doctrine.   There a second mortgagee, who had paid the interest on the first mortgage in order to protect his security, attempted to be admitted as a participant in such prior mortgage to the extent of his payment.   The court denied the application, on the ground that the grant of such relief would impair the security of the prior mortgagee.   But, had there been an intervening mortgagee, there is no doubt that the person who had made the advance would have occupied a position superior to such intermediate incumbrancer.   The instant case presents such a situation. Besides, in good equity, the amount of defendant's advances should be treated as prior in lien to that of the plaintiff.

Judgment in foreclosure is, therefore, directed in conformity with this opinion.   Let proposed findings and conclusions be submitted on notice accordingly.