SKANEATELES SAVINGS BANK, Plaintiff, v JOSEPH R. HEROLD, SR., et al., Defendants. METROPOLITAN BANK OF SYRACUSE, Appellant, and DONALD M. FISHER, as Executor of BERNARD FISHER, Deceased, et al., Respondents.

Fourth Department, December 12, 1975

*Costello, Cooney & Fearon (Donald Nicholas* of counsel), for appellant.

*Donald M. Fisher, pro se (Frank M. Klinger* of counsel), for respondents.

GOLDMAN, J. Metropolitan Bank of Syracuse, New York (Metropolitan) appeals from an order of Onondaga County Special Term which determined that respondents, the Fishers, had a second mortgage upon certain real property and that Metropolitan's mortgage on the same property was junior and subordinate to the Fisher mortgage. The action was brought by the Skaneateles Savings Bank (Skaneateles) to foreclose its first mortgage upon the subject realty, which is owned by J. R.

Herold & Son, Inc. and J. R. Herold, Sr. and Jr. individually. The Herolds and Skaneateles have not appealed, and the first priority of Skaneateles is not in dispute.

In October, 1972 the Fishers held demand notes totaling $30,000, owed by the Herolds. At that time the Herolds were negotiating for a term loan from appellant Metropolitan, to be guaranteed by the United States Small Business Administration (SBA). In order to meet SBA requirements the Herolds procured from the Fishers a written agreement pursuant to which the terms of the Herolds' $30,000 indebtedness to them were modified as follows: in place of demand notes, the Herolds executed a $30,000 promissory note, payable in monthly installments over 7 years, with interest at 7½% per annum on the unpaid principal. The note was secured in part by a mortgage on the subject realty. The agreement provided that the Fisher mortgage would be subordinate to the first mortgage held by Skaneateles, and also to the second mortgage that was to be taken by Metropolitan to secure its forthcoming loan to the Herolds. In early November, 1972 Metropolitan did make the SBA-guaranteed loan, evidenced by the Herold note in the amount of $80,000, payable over 7 years with interest at 8¼% per annum. The loan was secured by a mortgage which, pursuant to the agreement, was recorded prior to the Fisher mortgage.

The result of the 1972 transactions, as the parties concede, was that Skaneateles had first priority, Metropolitan second, and the Fishers third. So it remained until 1974, when the Herolds embarked on another series of negotiations, the object of which was to obtain an additional $10,000 in capital from Metropolitan. Rather than treat the additional amount as a new loan separate and distinct from the 1972 loan, on which a balance of $78,000 was still owed, Metropolitan consolidated the two amounts. The Herolds gave Metropolitan a new note in the amount of $88,000, payable over 10 years with interest at 11% per annum. The SBA agreed to guarantee the consolidated loan on condition that it be secured by a mortgage subject only to the first mortgage held by Skaneateles, and that $78,000 of proceeds be used to pay the balance of the 1972 Metropolitan loan. A further condition was that an agreement be procured from the Fishers by which they would subordinate their loan to the new Metropolitan loan and extend the term of their loan to match the 10-year amortization schedule of the new Metropolitan loan. The record does

not disclose negotiations with the Fishers as to the new loan and no agreement was ever obtained from them. The SBA nevertheless guaranteed the loan. Metropolitan marked the original note "paid" but retained possession of it, together with the new note and the 1972 mortgage. Although the mortgage was not expressly renewed or modified to secure the 1974 consolidated loan, neither was it discharged of record.

The Fishers urge that the giving of the new $88,000 note constituted payment in full of the balance due on the original note, so that the mortgage securing the original note was satisfied and extinguished, at least with respect to non-consenting third parties like themselves. Therefore, the Fishers conclude, Metropolitan lost its priority as to the whole amount of the $88,000 consolidated loan. Special Term agreed and held that "Fisher is now the second mortgagee, and the Metropolitan Bank is in the position of junior encumbrancer subject to the interest of the Fishers". Metropolitan maintains that it still has priority over the Fishers with respect to the $78,000 balance due on the 1972 loan, while conceding that the Fishers have priority with respect to $10,000 of new capital advanced to the Herolds via the 1974 consolidated loan. We agree with appellant.

"In this state a mortgage is a lien simply, and the general principle is well settled that on payment the lien is *ipso facto* discharged and the mortgage extinguished." *(Bogert v Bliss,* 148 NY 194, 198.) In instances where there has been actual payment, a transaction that purports to revive the mortgage to secure a new debt, or to assign the mortgage, before it is discharged of record, to a third party with notice that it has been paid, will be ineffective to preserve the mortgage's former priority as against creditors (such as the Fishers) who did not assent to the transaction *(Bogert v Bliss, supra; Salvin v Myles Realty Co,* 227 NY 51).

The pivotal question, therefore, is whether the new note given by the Herolds in 1974 constituted payment of the debt secured by the 1972 mortgage. No doubt the acceptance of a promissory note from the mortgagor can constitute payment if the parties so intend, but there is a strong presumption against such an intent. In *Sawyer v Marmaro* (134 Misc 476, affd 228 App Div 754) the acceptance of the mortgagor's promissory note was deemed not to constitute payment in the absence of proof that the parties had an express understanding to that effect. In *Industrial Bank of Commerce v Shapiro*

(276 App Div 370, 372, affd 302 NY 566), the First Department stated: "A promissory note is delivered and accepted as evidence of a debt rather than in payment thereof, unless there be an agreement that the note is received in payment of the debt".

The respondents stress the form of the 1974 transaction: the 1972 note was marked "paid", the SBA guarantee agreement required $78,000 of the new loan proceeds to be used to pay the 1972 loan and the new note was given for a larger sum, to be repaid over a longer period. We are mindful, however, that equity looks to substance and the merits rather than the form of a transaction *(Washer v Seager,* 272 App Div 297, 306, affd 297 NY 918). Here it is undisputed that no money was actually given by the Herolds or anyone else in payment of the 1972 note. The "payment" was merely a paper transaction, a bookkeeping operation accompanying the consolidation of the two loans. The original note was not released nor was the mortgage discharged of record. A rather similar situation was presented in *Industrial Bank of Commerce v Shapiro (supra,* p 373) where it was said: "When the first note * * * was marked paid, it was merely renewed. The fact that the second note was larger in amount does not prevent its being a renewal to the amount of the prior note. Only the excess over the previous note was paid in cash * * * the rest was just a bookkeeping transaction. The original debt was not extinguished. Marking the first note paid signified that the first negotiable instrument which evidenced the debt had been cancelled and superseded *pro tanto* by another." Although *Industrial Bank* involved a chattel mortgage, the same logic and principle applies in the case of a mortgage on realty. We conclude that the acceptance of the $88,000 note in 1974 was not intended to constitute payment of the $78,000 balance on Metropolitan's 1972 loan. The mortgage was therefore not extinguished and Metropolitan retains its priority over the Fishers as to the outstanding balance of the sums loaned in 1972, computed according to the original terms of that loan. As to the $10,000 of new capital loaned in 1974 after the Fisher mortgage intervened, the Fishers of course have priority, as appellant Metropolitan concedes.

Equity is well served by such a result. By computing separately the amounts due under the old and new loans, each by its own terms, prejudice to the intervening lienor is avoided (cf., *Dominion Financial Corp. v 275 Washington St Corp.,* 64

Misc 2d 1044). Moreover, the increase in the amortization period from 7 to 10 years does not impair the security of the Fisher mortgage. By the terms of the original loan the Herolds were required to pay monthly installments of $1,257. Under the consolidated loan the payments are $1,230. Thus the monthly debt burden, and with it the likelihood of default, were actually decreased slightly by the consolidation (cf., *100 Eighth Ave Corp. v Morgenstern,* 3 Misc 2d 410, mod on other grounds 4 AD2d 754; *Remodeling & Constr Corp. v Melker,* 65 NY Supp 2d 738, affd 270 App Div 1053).

We, therefore, reach the following result: (1) that the mortgage lien of Metropolitan is prior to that of the Fishers to the extent of the outstanding balance on the 1972 loan, plus interest computed at 8¼% per annum to the date of maturity, and (2) that Metropolitan's priority as to the rest of the sums due under the 1974 consolidated loan is junior and subordinate to the priority of the Fisher mortgage lien. The order should therefore be reversed.

MARSH, P. J., MOULE, DEL VECCHIO, and WITMER, JJ. concur.

Order unanimously reversed on the law, without costs and judgment granted in accordance with opinion by GOLDMAN, J.