**In re Donald Wayne EARL, Debtor.**

**Bankruptcy No. 90–01089.**

United States Bankruptcy Court,
N.D. New York.

Oct. 5, 1992.

Edward W. Goehler, Cortland, N.Y., for debtor.

William F. Larkin, Asst. U.S. Atty., Syracuse, N.Y., for Farmers Home Admin.

Connor, Curran & Schram, Hudson, N.Y. (Theodore Guterman, II, of counsel), for the Estate of Harry Moskowitz.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of an objection filed by Farmers Home Administration ("FmHA") to the confirmation of Donald W. Earl's ("Debtor") amended Chapter 13 Plan. FmHA's objection concerns the priority of mortgage liens held by FmHA and the estate of Harry Moskowitz ("Moskowitz") against certain real property owned by Debtor and his wife, which is located in Moravia, Cayuga County, New York ("the Property").

A hearing on the matter, originally scheduled for February 27, 1992, in Utica, New York, was adjourned until March 26, 1992 and was completed on the same day. On the date of the hearing, the parties filed a joint stipulation of facts concerning the transactions underlying the controversy. Upon conclusion of the hearing, the parties were given until April 24, 1992 to submit memoranda of law. Moskowitz consented to an extension of this date until May 4, 1992, at which time the matter was submitted for decision.

## JURISDICTIONAL STATEMENT

■ This is a non-core matter which seeks to resolve a lien priority dispute which was expressly reserved in the Court's May 6, 1992, Order confirming Debtor's Chapter 13 Plan, and is thus a matter related to the administration of the estate. 28 U.S.C. § 157(b)(3). *See Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). The parties have, however, impliedly consented to this Court's jurisdiction to enter a final order in resolution of this related matter both in voting to confirm the Plan subject to resolution of the lien priority dispute at a later time, and further, in not objecting to this Court's assumption of jurisdiction to determine the matter when that later time finally arose. *See* 28 U.S.C. §§ 1334(b), 157(a) and 157(c)(2); *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138–39 (2d Cir.1987); *accord In re Fiero Productions, Inc.*, 102 B.R. 581 (Bankr.W.D.Tex.1989).

## FACTS

### A. FACTUAL BACKGROUND

On May 3, 1990, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). On September 20, 1990, FmHA filed a proof of claim in the amount of $161,613.97. On January 29, 1992 Moskowitz filed a proof of claim in the amount of $25,000.00. Although dispute exists as to the priority of liens held against the Property by both FmHA and Moskowitz, it is undisputed that Fleet Bank of New York ("Fleet"), as successor-in-interest to Norstar Bank of Central New York ("Norstar"), holds a first mortgage against the Property upon which a proof of claim in the amount of $76,438.64 was filed on October 16, 1990.[1] Debtor's schedules also reflect an indebtedness for outstanding "county/town/school" taxes for the years 1988 through 1990 in the approximate amount $24,295.94.

On or about January 29, 1992, Debtor's amended Plan of reorganization was confirmed. The Order confirming the Plan was entered on May 6, 1992, subject to resolution of the dispute concerning the priority of the FmHA and Moskowitz liens.

### B. STIPULATED FACTS

The parties have stipulated that on September 30, 1977, Debtor and his wife executed two promissory notes that were

---

1. The Court notes that through a corporate name change which took place while this matter was pending, Fleet became the successor-in-interest to Norstar's first mortgage interest in the Property. As of the date of this decision, however, the Court has not been noticed of such change by any party in interest.

made payable to FmHA. The first note was in the principal amount of $100,000.00, carried an eight percent annual rate of interest and had a term of forty years. The second note, in the principal amount of $15,000.00, carried a three percent annual rate of interest for a term of seven years. Both notes were secured by a single mortgage which was executed by Debtor, his wife, and FmHA on September 30, 1977, and was recorded in the Cayuga County, New York, Clerk's Office on the same day.

On July 27, 1978, Debtor and his wife executed three additional promissory notes that were payable to FmHA. The first of these was in the principal amount of $21,670.00, and carried an annual rate of interest of three percent for a twenty year term. The second note was in the principal amount of $8,330.00, and carried an eight percent annual rate of interest for a forty year term. The third note executed on this date was in the principal amount of $5,000.00, carried an eight percent annual rate of interest and a seven year term. All three of these notes were secured by a single mortgage which was executed by the parties on July 27, 1978, and recorded in the Cayuga County Clerk's Office on the same day.

On or about October 8, 1982, a note and mortgage between Debtor, his wife, and Harry Moskowitz, in the amount of $22,400.00, was recorded in the Cayuga County Clerk's Office.

On or about June 17, 1983 Debtor and his wife paid off both the $15,000.00 promissory note of September 30, 1977, and the $5,000.00 promissory note of July 27, 1978.

On December 15, 1986, Debtor and his wife executed three promissory notes that were made payable to FmHA. The first of these notes was in the principal amount of $119,664.06 and carried an eight percent annual rate of interest for a term of thirty one years. Attached to this note is the $100,000.00 promissory note of September 30, 1977, upon which is stamped "reamortized, not paid".

The second note executed to FmHA on this date was in the principal amount of $19,005.70 and carried a three percent an-

nual rate of interest for a term of twelve years. Attached to this note is the $21,670.00 promissory note of July 27, 1978, which also bears the stamp "reamortized, not paid".

The third note executed to FmHA on this date was in the principal amount of $7,735.03 and carried an eight percent annual rate of interest for a term of thirty two years. Attached to this note is the $8,330.00 promissory note of July 27, 1978, upon which is stamped "reamortized, not paid".

The three promissory notes of December 15, 1986, were secured by a single mortgage which was executed by the parties on December 20, 1986 and recorded in the Cayuga County Clerk's Office on December 22, 1986.

Additionally, on or about May 3, 1988, Debtor and his wife executed a promissory note to FmHA in the principal amount of $10,000.00, which carried an annual interest rate of eight and a half percent for a term of seven years. On the same date, the parties executed a mortgage to secure this note. The mortgage was recorded in the Cayuga County Clerk's Office on May 9, 1988. This mortgage was subsequently discharged by FmHA and a discharge of mortgage was filed in the Cayuga County Clerk's Office on September 4, 1991.

Both the mortgage of September 30, 1977 and the mortgage of July 27, 1978 have not been discharged and remain on file at the Cayuga County Clerk's office. Additionally, the Moskowitz mortgage of October 8, 1982 has not been discharged and also remains on file at the Cayuga County Clerk's Office.

## ARGUMENTS

FmHA contends that its 1986 mortgage lien has priority over the Moskowitz lien because the 1986 notes and mortgage simply reamortized prior notes and mortgages held by FmHA, which were duly filed and perfected in 1977 and 1978, and thus, existed prior to the creation of the Moskowitz lien. Additionally, FmHA contends that because the underlying notes were never

satisfied, nor the mortgages discharged, the liens created by these instruments continue under the 1986 mortgage despite reamortization of the debt and the addition thereto of accrued interest.

Moskowitz, on the other hand, also claiming priority, takes the position that FmHA's 1977 and 1978 notes and mortgages were extinguished upon execution of FmHA's 1986 notes and mortgage. Moskowitz contends therefor, that because its mortgage was filed and perfected in 1982, and thus prior to the 1986 FmHA mortgage, its lien is senior to that of FmHA.

Alternatively, Moskowitz contends that if the 1986 FmHA notes and mortgage are determined to be modifications of Debtor's prior obligations to FmHA, then such modification is prejudicial to its rights as a junior lien holder because the 1986 notes are for larger principal amounts and require larger annual payments than before. At the hearing, Moskowitz also argued that the effective rate of interest under the 1986 notes was higher than that under the original notes, thereby further prejudicing its interests as a junior lien holder. Moskowitz contends, that because it did not consent to the impairment of its lien, FmHA's 1986 mortgage lien must be subordinated to that of the Moskowitz mortgage.

Moskowitz also contends that the 1988 FmHA loan constitutes new money that was advanced to the Debtor subsequent to the Moskowitz loan. Moskowitz argues that FmHA misapplied Debtor's 1988 payment, arbitrarily applying it in satisfaction of the 1988 promissory note in order to purposely defeat the rights of the Moskowitz mortgage. Moskowitz contends that in determining the priority of liens, the Court should apply this payment to the earliest outstanding FmHA debt in order to reduce FmHA's claim against the Property.

## DISCUSSION

■ Questions concerning the relative priority of private liens and consensual federal liens arising under FmHA administered loan programs are to be determined according to state lien priority law. *See*

*Federal Land Bank of Wichita v. Ferguson*, 896 F.2d 1244, 1247 (10th Cir.1990); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 1465, 59 L.Ed.2d 711 (1979); *see United States v. Smith*, 832 F.2d 774, 775–76 (2d Cir.1987) (adopting the commercial law of New York as the appropriate federal rule of decision regarding FmHA security interests in crops). Accordingly, this Court turns to the laws of the state of New York to resolve the dispute concerning the relative priority of the mortgage liens held by FmHA and Moskowitz.

■ It is well settled law in New York that the execution of a subsequent promissory note does not discharge the original debt secured, unless there is an express agreement between the parties to such effect. *Home & City Savings Bank v. Bilinski*, 177 A.D.2d 73, 580 N.Y.S.2d 561, 562 (3d Dept.1992) (citations omitted); *Matter of Taylor*, 103 B.R. 511, 520 (D.N.J. 1989) (applying New York law, citations omitted), *aff'd*, 913 F.2d 102 (3d Cir.1990). Moreover, there is a strong presumption against finding that a subsequent note was intended for payment of a prior note. *See Skaneateles Savings Bank v. Herold*, 50 A.D.2d 85, 376 N.Y.S.2d 286, 289 (4th Dep't.1975) (citation omitted), *aff'd*, 40 N.Y.2d 999, 391 N.Y.S.2d 107, 359 N.E.2d 701 (1976); *Matter of Taylor, supra*, 103 B.R. at 520.

■ In the instant matter it is clear that the promissory notes and mortgage executed in 1986 were not intended to discharge Debtor from the prior indebtedness. First, each of the 1986 promissory notes, *see* FmHA Exhibits F, G and H, has been marked "Reamortization" in the "Action Requiring Note" block on the face of each of the notes. Relevant to such notation is the language found on page two of each of these notes which provides that "[i]f … 'Reamortization' is indicated in the 'Action Requiring Note' block above, this note is given to … reamortize, *but not in satisfaction of the unpaid principal and interest on the following described note(s) …*[.] *Id.* (emphasis added). In the appropriate spaces provided, *see* FmHA Exhibits

F, G and H, at page 2, each note makes specific reference to the prior note which it reamortizes. Thus, FmHA Exhibit F references the July 27, 1977, promissory note in the amount of $100,000.00. FmHA Exhibit G references the July 27, 1978, promissory note in the amount of $8,330.00. FmHA Exhibit H references the July 27, 1978, promissory note in the amount of $21,670.00.

The clause next following the language quoted above, provides that:

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this ... reamortizing. *These security instruments shall continue to remain in effect* and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

*See* FmHA Exhibits F, G and H at p. 2 (emphasis added).

Furthermore, the 1977 and 1978 mortgages, *see* FmHA Exhibits B and E respectively, specifically contemplated future reamortization of the debt secured, without affecting the priority of the FmHA liens arising thereunder. Both of these mortgages, at page eleven, paragraph fourteen, provide:

The Government may extend and defer the maturity of and renew and reamortize the debt evidenced by the note ... secured hereby ... without affecting the lien or priority hereof or the liability to the Government of Borrower or any other party for payment of the note ... secured hereby except as specified by the government in writing.

*Id.*

The 1986 mortgage contains similar language, *see* FmHA Exhibit I, at paragraph fourteen, but adds the following clause:

The promissory notes described on the face of this instrument and identified by * [each being dated December 15, 1986, in the amounts of $119,664.06, $19,005.70 and $7,735.03 respectively], are given to Consolidate, Reschedule, or Reamortize,

*but not in satisfaction or [sic] the unpaid principal and interest on the following described notes* ... dated September 30, 1977 in the amount of $100,000.00, July 27, 1978, in the amount of $21,670.00, and July 27, 1978, in the amount of $8,330.00.

*Id.* at ¶ 25.

Additionally, each of the original notes have been retained by FmHA, stamped "reamortized, not paid", and have been attached to the new note which succeeds it. Also, the mortgages securing the original notes have not been discharged, and remain on file at the Cayuga County Clerk's office. Although the annual payments required under each of the new notes are larger than on the original notes, resulting in part from the amortization of accrued interest in accordance with both, FmHA regulations, *see* 30 C.F.R. § 1951.-909(e)(2)(viii)(C) (1992), and state law, *See* New York Real Property Law ("NYRPL") § 291 (McKinney 1989), the annual rate of interest under both the original and subsequent notes is the same, and the term of each of the new notes constitutes the remainder of the term of each of the original notes. The Court finds that under these circumstances the 1986 notes and mortgage were not intended to satisfy Debtor's prior indebtedness to FmHA, nor to discharge the 1977 and 1978 mortgages. Additionally, the Court also finds that Moskowitz has failed to present evidence sufficient to overcome the presumption that the subsequent notes and mortgage *were not* intended as a discharge of the prior indebtedness. Accordingly, the priority of FmHA's original mortgage liens remains unaffected by the subsequently executed 1986 promissory notes and mortgage. *See Home & City Savings Bank v. Bilinski, supra*, 177 A.D.2d 73, 580 N.Y.S.2d at 562; *Skaneateles Savings Bank v. Herold, supra*, 50 A.D.2d 85, 376 N.Y.S.2d at 290.

■ Moreover, the priority of FmHA's original mortgage liens extends to the 1986 promissory notes and mortgage, including the accrued interest that was amortized and incorporated therein. *See Skaneateles Savings Bank v. Herold, supra*, 50 A.D.2d

85, 376 N.Y.S.2d at 290–91, *Dominion Finance Corp. v. 275 Washington St. Corp.*, *supra*, 64 Misc.2d at 1048, 316 N.Y.S.2d 803.

However, it is also well established in New York that in modifying or extending the terms of a prior note or debt obligation, a senior lien holder may not adversely affect or impair the rights of an intervening lienor, absent consent of the latter. *See Dominion Financial Corp.*, *supra*, 64 Misc.2d at 1046, 316 N.Y.S.2d 803 (citations omitted); *Diamond v. Tau Holding Corp.*, 131 Misc. 446, 226 N.Y.S. 129, 132 (Sup.Ct.1927)). In this regard, Moskowitz contends that because the new notes are for larger principal amounts than the original notes they replace, such increases constitute advances of new money by FmHA occurring subsequent to the creation of Moskowitz's security interest in the Property. Further, that due to the larger payments thereby required, its security interest has been prejudiced because there is an increased possibility that its mortgage lien will not be satisfied. However, upon review of the 1986 notes and mortgage, it is apparent that no new money was advanced to the Debtor. Rather, the increases to which Moskowitz refers resulted from the amortization of accrued interest arrears which arose due to Debtor's default on the original notes. Moskowitz's interests have not been prejudiced by these increases, because absent default, Debtor would have already made payment of these sums to FmHA.

At the hearing, Moskowitz raised the additional argument that in charging interest on the accrued interest arrears, the rate of interest of each of the original notes had effectively been increased upon reamortization in 1986. While the rate of interest under each of the 1986 notes is the same as that charged under each of the corresponding 1977 and 1978 notes, *see* Stipulated Facts, *supra*, due to the amortization of the interest arrears with the principal debt, the total amount of interest that Debtor would have been required to pay over the term of the original notes was increased. However, Moskowitz would only be entitled to relief to the extent that his interests were prejudiced thereby. *See Skaneateles Savings Bank v. Herold*, *supra*, 50 A.D.2d 85, 376 N.Y.S.2d at 290 (citation omitted) (prejudice to intervening lienor avoided by computing separately the amount due under the old and new notes, each by its original terms to maturity).

In the instant matter, Moskowitz has not been prejudiced by FmHA's actions, because Moskowitz's security interest in the Property would have effectively been extinguished had FmHA chosen foreclosure of its security interest in 1986 rather than reamortization. In this regard, an FmHA appraisal of the property, originally dated October 30, 1989, and subsequently re-ascribed to on September 6, 1990, reflects a value of approximately $195,000.00. Alternatively, Debtor's schedules list the value of the Property at approximately $175,000.00. Even allowing Moskowitz the benefit of the higher valuation and applying same towards the satisfaction of claims of superior priority, e.g. Norstar's first mortgage in the approximate amount of $76,438.64, and outstanding principal and accrued interest arising under the 1977 and 1978 FmHA promissory notes in the approximate amount of $146,404.79, there would have been no funds available to distribute to Moskowitz on its secured claim. Thus, Moskowitz's security interest suffered no prejudice as a result of the FmHA's 1986 reamortization of Debtor's indebtedness to it.

Finally, Moskowitz contends that FmHA misapplied a payment made by Debtor in satisfaction of the 1988 FmHA loan. Moskowitz argues that upon lack of direction by either FmHA or the Debtor as to how Debtor's 1988 payment was to be applied, such payment should have been applied first to the earliest outstanding FmHA loan, thereby reducing FmHA's claim against the Property.

It is generally recognized that in a situation involving a debt composed of several items, absent direction by the debtor as to how a payment is to be applied, the creditor may apply the payment as it sees fit and to its best advantage. *See Home &*

*City Savings Bank v. Bilinski, supra,* 177 A.D.2d 73, 580 N.Y.S.2d at 563 (citations omitted); *Davison v. Klaess,* 280 N.Y. 252, 261, 20 N.E.2d 744 (1939). Only where the evidence reveals a lack of direction by either party is the court to substitute its own judgment to determine the proper application as "equity and justice requires". *See Home & City Savings Bank v. Bilinski, supra,* 177 A.D.2d 73, 580 N.Y.S.2d at 563 (citation omitted). The facts presented here, however, do not warrant such action by the Court.

 Sharon Barbaglia ("Barbaglia"), FmHA County Supervisor, Cayuga County, New York, called as FmHA's only witness, testified that the 1988 FmHA loan was a different type of loan than those that had been reamortized. She testified that, the 1988 loan was a short term loan obtained by Debtor for the purpose of procuring cows. Barbaglia testified further, that as a loan for the purchase of cows, it was secured both by a lien on the cows obtained with the proceeds of the loan, and also by a real property mortgage on Debtor's Property (FmHA Exhibit J).

Although Debtor did not direct how the payment in question was to be applied, the Court finds that its application by FmHA in satisfaction of the 1988 promissory note was not arbitrary. FmHA Exhibit J indicates that the $10,000.00 loan was entered on or about May 3, 1988. Barbaglia testified that the note was paid back approximately six weeks later, on or about June 16, 1988, after the cows obtained with the proceeds of the loan had been sold.

The Court found Barbaglia's testimony concerning the 1988 promissory note to be credible. Furthermore, the Court finds that Debtor's payment was properly applied according to FmHA policy requiring application of "extra payments" "first to the FmHA loan having highest priority of lien on the security from which the payment was derived...." 7 C.F.R. § 1951.-

9(b) (1992).[2] That the real property mortgage was not discharged of record in the Cayuga County Clerk's Office until on or about September 4, 1991, *see* FmHA Exhibit K, subsequent to the filing date of Debtor's petition, is of no real significance. Under these circumstances, the Court concludes that Debtor's undirected payment to FmHA, made on or about June 16, 1988, which was derived from the proceeds of the sale of the cows securing the loan, was properly directed by FmHA in satisfaction of the 1988 promissory note. *See Snide v. Larrow,* 62 N.Y.2d 633, 476 N.Y.S.2d 112, 113, 464 N.E.2d 480 (1984); *Davison v. Klaess, supra,* 280 N.Y. at 261, 20 N.E.2d 744.

Based on the foregoing conclusions, it is

ORDERED that FmHA's 1977 and 1978 mortgage liens were not extinguished by FmHA's 1986 promissory notes and mortgage, which were executed to reamortize the principal balance due under the 1977 and 1978 promissory notes and to incorporate interest arrears which accrued thereunder, and it is further

ORDERED that the 1986 promissory notes and mortgage retain the lien priority of the 1977 and 1978 notes and mortgages, and it is further

ORDERED that FmHA's proof of claim, filed in the amount of $161,613.97, arising under the 1986 promissory notes and mortgage, is fully secured by the lien of FmHA's mortgage, and it is further

ORDERED that Debtor's 1988 payment to FmHA, derived from the sale of collateral upon which Moskowitz had no lien, was properly applied in satisfaction of the 1988 promissory note which was secured by the collateral that was sold.

---

**2.** "Extra payments" are defined as payments derived from the sale of chattels other than those which are sold to produce farm income. *See* 7 C.F.R. § 1951.8(b) (1992). "Farm income" refers to the sale of chattels which are normally sold annually during the regular course of busi-

ness such as "crops, feeder livestock, and other farm products." *See* 7 C.F.R. § 1962.4 (1992). Moskowitz did not object to the classification of the questioned payment as being an "extra payment".