■ NORSTAR BANK, Respondent, v CHRISTOPHER J. MORABITO et al., Defendants, and NORMAN SHOHET et al., Appellants. [607 NYS2d 426] —In an action to foreclose a mortgage, the defendants, Norman Shohet, as Trustee of Republic Pension Services, Inc., Trustee, Group Trust #47; Republic Pension Services, Inc., Trustee, Group Trust #47; and Republic Pension Services, Inc., appeal, as limited by their notice of appeal and

their brief, from so much of an order of the Supreme Court, Suffolk County (Doyle, J.), dated November 12, 1991, as denied the branch of their motion which was for partial summary judgment on their affirmative defense of equitable subrogation.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, and the branch of the appellants' motion which was for partial summary judgment on their affirmative defense of equitable subrogation is granted.

The present action is a foreclosure action brought by the plaintiff, Norstar Bank, formerly known as Peconic Bank.

In July 1985, Michael Padden gave a mortgage in the amount of $170,000 (hereinafter the Padden mortgage) to Republic Pension Services, Inc. (hereinafter Republic). Padden subsequently transferred the property to Express Housing, Inc. (hereinafter Express Housing), in August 1985. At the request of Express Housing, Republic refinanced the Padden mortgage. Accordingly, in November 1985, Express Housing executed a new mortgage in the increased amount of $280,000 to Republic (hereinafter the Express Housing mortgage). At the closing, Republic made an intracompany transfer by drawing a check in the amount of $174,215.03 payable to "RPS-GT47" (Republic Pension Services, Inc., Group Trust #47). In addition, a satisfaction of the original $170,000 Padden mortgage was delivered to the title closer to be recorded simultaneously with the recording of the Express Housing mortgage.

Several months later, in January 1986, Express Housing gave a third mortgage in the amount of $250,000 to Peconic Bank, now known as Norstar Bank (hereinafter the Peconic mortgage). Significantly, at the time of the closing of the Peconic mortgage, neither Republic's satisfaction of the original $170,000 Padden mortgage nor the $280,000 Express Housing mortgage were recorded. Subsequently, Norstar brought this action to foreclose the Peconic mortgage.

It is well-settled that an action to foreclose a mortgage is equitable in nature and triggers the equitable powers of the court (see, Notey v Darien Constr. Corp., 41 NY2d 1055). Once equity is invoked, the court's power is as broad as equity and justice require (see, Ripley v International Rys., 8 AD2d 310, 328, affd 8 NY2d 430). In cases such as the one at bar, the court sitting in equity looks to the substance and to the merits of a transaction, rather than to its form (see, Skaneateles Sav. Bank v Herold, 50 AD2d 85, 89, affd 40 NY2d 999).

Looking at the substance of the subject transactions, the conclusion is indubitable that Republic did not intend to discharge the $170,000 Padden mortgage without concomitantly replacing it with the $280,000 Express Housing mortgage as the first lien on the property. In essence, the satisfaction of the Padden mortgage was conditioned upon its replacement by the Express Housing mortgage. To argue otherwise would be to ignore the substance of the transaction (i.e., the refinancing of the Padden mortgage). In addition, it is significant that no money was actually given to Republic to discharge the Padden mortgage *(see, Skaneateles Sav. Bank v Herold, supra,* at 89). Indeed, the intracompany transfer of $174,215.03 was simply "a bookkeeping operation" accompanying the refinancing of the Padden mortgage *(Skaneateles Sav. Bank v Herold, supra,* at 89). Therefore, we conclude that the satisfaction of the Padden mortgage was not effective upon its delivery to the title closer. Accordingly, while the $280,000 Express Housing mortgage did not gain priority over Norstar's interest because it was not recorded beforehand, the Padden mortgage remained a valid first lien of record against the subject premises. We note that equity is served by this result since, at the time the $250,000 Peconic mortgage was negotiated, Norstar had actual notice of the existence of the $170,000 Padden mortgage. Sullivan, J. P., Pizzuto, Joy and Goldstein, JJ., concur.