**In re Terry Kent MERRILL and Cynthia Ann Merrill, Debtors.**

**Bankruptcy No. 00–60069.**

United States Bankruptcy Court, W.D. Missouri.

Feb. 13, 2001.

---

Leslie K. Rosenfeld, Kansas City, MO, for movant.

Thomas J. O'Neal, Shughart Thomson & Kilroy, Springfield, MO, for respondent.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Creditor Community Financial Credit Union (CFCU), formerly known as Mid–America Credit Union (Mid–America), repossessed debtors' 1996 Dodge truck, VIN B7HC13Z5TG101626 (the Truck), and filed a motion to compel the Chapter 7 trustee to abandon any interest the estate might have in the Truck. The Chapter 7 trustee challenged the perfection of CFCU's lien and demanded turnover of the Truck. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

Missouri law provides that a motor vehicle certificate of title must indicate if the secured creditor retains the right to make future advances against the Note secured by the automobile. CFCU loaned debtors money to purchase the Truck. After having its lien noted on the Certificate of Title, CFCU made two additional loans to debtors, both of which were at least partially secured by the Truck. Though the security agreement clearly stated that the loan was subject to future advances, that information was not noted on the Certificate of Title. Are the future advances perfected?

## DECISION

Missouri law requires a future advance provision contained in the security agreement to be noted on the Certificate of Title in order to perfect any future advances made pursuant to the security agreement. While a failure to so has no impact on the initial lien, it does result in a failure to perfect as to any future advances.

## FACTUAL BACKGROUND

On August 28, 1995, Debtors purchased the Truck. They financed the purchase through Mid–America by Executing a Note and Disclosure Statement (Note # 1), and they granted Mid–America a security interest in the Truck. By the terms of Note # 1, debtors agreed to pay Mid–America the sum of $435.92 for 59 months with the final payment in the amount of $428.31 due on September 12, 2000.[1] On March 20, 1997, debtors executed another Note and Disclosure Statement (Note # 2) with Mid–America in the amount of $31,483.02.[2] They secured this loan by granting Mid–America a security interest in a 1997 Dodge Neon and the Truck. By the terms of Note # 2, debtors agreed to pay Mid–America the sum of $650.14 per month for 59 months with the final payment of $635.03 due on March 20, 2002. As a result of this transaction, Note # 1 was marked "PAID BY RENEWAL

1. Creditor's. Ex. # 1.

2. Creditor's Ex. # 2.

3/20/97." [3] On November 24, 1998, debtors executed a third Note and Disclosure Statement (Note# 3) with Mid–America in the amount of $26,310.74.[4] They secured this loan by granting Mid–America a security interest in the 1997 Neon and the Truck. By the terms of Note # 3, Debtors agreed to pay Mid–America the sum of $543.82 per month for 59 months and one final payment in the amount of $543.45 due on November 30, 2003. As a result of this transaction, Note # 2 was marked "PAID BY RENEWAL 11/24/98." [5] All three Notes are accompanied by Security Agreements that contain future advance clauses.[6] In addition, Notes ## 1, 2, and 3 all clearly state on the first page that "[c]ollateral securing other loans with the credit union will also secure this loan." [7] But, the Certificate of Title for the Truck, while indicating that Mid–America holds the first lien, does not indicate that that lien is subject to future advances.[8]

On January 19, 2000, debtors filed a Chapter 7 bankruptcy petition. Prior to that time, they surrendered the 1997 Neon. On their bankruptcy schedules, however, they indicated that they still owned the Truck, they indicated their intention to retain the Truck, they indicated that CFCU held a lien on the Truck in the amount of $14,870.00, and they valued the Truck at $14,000.00. On April 25, 2000, debtors were granted a discharge. Sometime thereafter, the debtors surrendered the Truck to CFCU, but the Chapter 7 trustee never abandoned the estate's interest. On January 3, 2001, CFCU filed a motion to compel the trustee to abandon the estate's interest in the Truck. The trustee countered with a motion to compel turnover of the Truck claiming that CFCU is not properly perfected. This Court scheduled a hearing for January 24, 2000. At the hearing both parties consented to the Court treating the matter as a proceeding to determine the validity of CFCU's lien, despite the fact that no adversary proceeding was filed.

## DISCUSSION

■ Section 544 of the Bankruptcy Code enables a bankruptcy trustee to avoid the security interest of any creditor whose security interest is not properly perfected under applicable state law:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.[9]

Thus, the trustee is deemed to have a lien on all lienable property of the debtor. The hypothetical lien is inferior to any existing properly perfected lien at the time the petition is filed, and the hypothetical lien is superior to any improperly perfected lien. The perfection of a security interest in a motor vehicle is governed by state motor vehicle codes, while the rights arising from the perfected, or unperfected, status are determined by the Uniform Commercial Code (the UCC).[10] In Missouri, perfection

3. Creditor's Ex. # 1.

4. Creditor's Ex. # 3.

5. Creditor's Ex. # 2

6. Creditor's Ex. ## 1, 2, and 3.

7. *Id.*

8. Creditor's Ex. # 4.

9. 11 U.S.C. § 544(a)(1).

10. *Bruinsma v. Citizens Banking Corp. (In re Fleming),* 226 B.R. 3, 5 (Bankr.W.D.Mich. 1998); *Southtrust Bank of Alabama, N.A. v. Toffel (In re Blackerby),* 53 B.R. 649 (Bankr. N.D.Ala.1985).

is determined by section 301.600 of Missouri's Revised Statutes. Section 301.600 provides that in order to perfect a security interest in an automobile, the creditor must note the lien on the Certificate of Title:

**301.600. Perfection of liens and encumbrances, securing future advances—vehicles and trailers brought into state—security procedure to verify electronic notices**

1. Unless excepted by section 301.650, a lien or encumbrance on a motor vehicle or trailer, as defined by section 301.010, is not valid against subsequent transferees or lienholders of the motor vehicle or trailer who took without knowledge of the lien or encumbrance unless the lien or encumbrance is perfected as provided in sections 301.600 to 301.660.

2. A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue of a notice of a lien in a format as prescribed by the director of revenue. The notice of lien is perfected as of the time of its creation if the delivery of such notice to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery. A notice of lien shall contain the name and address of the owner of the motor vehicle or trailer and the secured party, a description of the motor vehicle or trailer, including the vehicle identification number, and such other information as the department of revenue may prescribe. A notice of lien substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.[11]

That section also permits perfection as to future advances with certain limitations:

3. Liens may secure future advances. The future advances may be evidenced by one or more notes or other documents evidencing indebtedness and shall not be required to be executed or delivered prior to the date of the future advance lien securing them. *The fact that a lien may secure future advances shall be clearly stated on the security agreement and noted as "subject to future advances" on the notice of lien and noted on the certificate of ownership if the motor vehicle or trailer is subject to only one notice of lien. To secure future advances when an existing lien on a motor vehicle or trailer does not secure future advances, the lienholder shall file a notice of lien reflecting the lien to secure future advances.* A lien to secure future advances is perfected in the same time and manner as any other lien, except as follows: Proof of the lien for future advances is maintained by the department of revenue; however, there shall be additional proof of such lien when the notice of lien reflects such lien for future advances, is receipted for by the department of revenue, and returned to the lienholder.[12]

Mid–America is noted as the first lien holder on the Certificate of Title, and Notes ## 1, 2, and 3, as well as the Security Agreements, contain provisions that inform the debtors that the collateral secures other loans. All three Notes state, "[c]ollateral securing other loans with the credit union will also secure this loan." [13] In addition, the Security Agreement provides as follows:

**WHAT THE SECURITY INTEREST COVERS**—The security interest secures the loan described in the Truth in Lending Disclosure and any extensions, renewals or refinancings of that loan. It also secures any other loans you have with the credit union now or in the

**11.** Mo.St.Ann. § 301.600.1 and 301.600.2 (Supp.2001).

**12.** *Id.* at § 301.600.3 (emphasis added).

**13.** Creditor's Ex. ## 1, 2, and 3.

future including any credit card loans and any other amounts you owe the credit union for any reason now or in the future, except any loan secured by your principal residence. If the property description is marked with one star(*), or the property is household goods as defined by the Credit Practice Rule, the property will secure only this loan and not other amounts you owe.[14]

But there is no indication on the Certificate of Title that the lien is subject to future advances, and the Security Agreements do not specifically state "subject to future advances," as required by the Motor Vehicle Statute. Nor was an additional Notice of Lien filed as to the advances reflected in Notes ## 2 or 3. According to **American Jurisprudence,** when a security interest in a motor vehicle is perfected by a notation on the Certificate of Title, a perfected security interest as to future advances may be created by adding after the certificate notation of the amount of the lien the words "together with future advances." [15] There is, however, no requirement in Missouri that the amount of the lien be noted on the Certificate of Title. And there are no Missouri cases on this issue. Other states have dealt with the issue of whether a lien subject to future advances must be noted on the Certificate of Title, but in each of those cases, the relevant statute did not specifically require the notation.

In *Co–op Credit Union v. Geremia (In re Spaziano),*[16] the creditor made one loan to debtor secured by an automobile. That lien was duly noted on the Certificate of Title. The same creditor made a second loan to debtor also secured by the same automobile. The creditor failed to obtain a new Certificate of Title noting the second loan. The Court held that as long as the first lien was noted on the Certificate of Title, the same creditor made the second loan, and that same creditor maintained possession of the Certificate of Title at all times, the liens were perfected.[17] The Court reasoned that under Rhode Island law a perfected security interest is only released when the lienholder executes and delivers a release and the Certificate of Title to the owner. Since the creditor never executed the release and still held the Certificate with the lien noted, it served as notice of the first lienholder. A third party would have to contact the first lienholder, who also had information about the second loan transaction.[18] The state statute did not require a notation on the title if the lien was subject to future advances.

A similar situation arose in *Dickey v. Beneficial Consumer Discount Company (In re Dickey).*[19] In *Dickey,* the debtor purchased an automobile and granted the lender a lien on the car and a second mortgage on some real estate. A few months later, the debtor borrowed some additional sum from the creditor to pay for repairs to the car. The creditor did not perfect the repair loan. The trustee claimed that the secured creditor was not perfected as to the repair loan. The Court disagreed. It held that a lender was not required to have a second lien in its favor noted on the Certificate of Title in order to perfect same, if the debtors agreed to provide the car as collateral for the second loan, they intended for the creditor to hold the title until both loans were satisfied, and anyone put on inquiry notice by the first lien noted on the title would have discovered the second loan secured by the car.[20] Again, the state statute did not

**14.** Creditor's Ex. ## 1, 2, and 3.

**15.** **68A Am.Jur.2d** § 249 (1993) citing Opinion of Atty. Gen. of Wyo., 1967 WL 8977, 4 UCC Rep.Serv. 615 (Wyo.Atty.Gen., 1967).

**16.** 16 B.R. 799 (Bankr.D.R.I.1982).

**17.** *Id.* at 798.

**18.** *Id.*

**19.** 214 B.R. 145 (Bankr.W.D.Pa.1997).

**20.** *Id.* at 147.

require a notation on the title if the lien was subject to future advances.

In *In re Grizaffi*,[21] the creditor held a perfected security interest in a 1980 Jeep. That lien, as well as the amount of the mortgage, was noted on the Certificate of Title. The creditor then claimed the Jeep also secured other loans not noted on the title. The Court found that the loan documents failed to show that the parties intended the Jeep to serve as collateral for any loans other than the purchase money loan.[22] The Court held that allowing a mortgage to attach having more value than the amount noted on the Certificate of Title would negate the purpose of the Colorado statute, which is to make the certificate conclusive as to the rights of the parties with respect to notice of prior encumbrances.[23] The Court in *Grizaffi* was most influenced by the fact that the creditor failed to prove the debtors ever intended the Jeep to serve as collateral for the other loans. That is not an issue here. There is no dispute that the debtors intended the Truck to collateralize all three loan transactions with Mid–America.

Another case that is instructive, if not directly on point, is *In re Fleming*.[24] In *Fleming* the Court held that a creditor did not need to execute a termination statement and file a new application with the Department of Revenue in the case of a refinancing.[25] The Court did, however, find that a termination statement and new application is necessary if the creditor commits to make advances or to give new value.[26] Mid–America never filed a termination statement or made new application when it executed Loans ## 2 and 3.

In *In re Earl*,[27] the bank reamortized a real estate loan to include accrued interest without recording the reamortized mortgage. The second lien holder argued that the loan balance increased and weakened his position, therefore, the reamortized loan was not perfected. The Court held otherwise. It stated that a reamortization of the accrued interest at the same interest rate and for the same term is not a future advance as no new money was advanced.[28] It, therefore, held the first lienholder was at all times properly perfected. CFCU cites this and other cases for the proposition that a bank need not refile a Notice of Lien if it simply renews a loan. That may well be true, but here CFCU made additional advances with at least one of the later loans, and changed the payment terms. Furthermore, *Earl* involves a real estate transaction, and the ruling does not involve a motor vehicle statute that mandates either notation on the Certificate of Title, or refiling, as to future advances.

Loan # 1 was for a term of 60 months with the last payment due on September 12, 2000, at an interest rate of 10 percent.[29] Loan # 2, which was for a larger amount than Loan # 1 and added a second vehicle as additional collateral, was for a term of 60 months with the last payment due on March 20, 2002, at an interest rate of 8.750 percent.[30] Loan # 3 was for a term of 60 months with the last payment due on November 30, 2003, at an interest rate of 8.750 percent.[31] Each new loan transaction extended the date of the final payment, yet the Certificate of Title at all times indicated that there was only a first

21. 23 B.R. 137 (Bankr.D.Colo.1982).

22. *Id.* at 139.

23. *Id.* at 140.

24. 226 B.R. 3 (Bankr.W.D.Mich.1998).

25. *Id.* at 5.

26. *Id.*

27. 147 B.R. 60 (Bankr.N.D.N.Y.1992).

28. *Id.* at 65–66.

29. Creditor's Ex. # 1.

30. Creditor's Ex. # 2.

31. Creditor's Ex. # 3.

lien on the Truck, and the lien date was August 28, 1995.[32]

In discussing Revised Article 9 with respect to Certificate of Title issues, Alvin Harrell notes that a secured party already perfected by a Certificate of Title lien should not have to do anything more to reperfect upon extending a new loan, or extending future advances. But he acknowledges that not all Courts agree, and that variations in state lien entry statutes contribute to the problem.[33] Section 301.600 of Missouri's Revised Statutes, however, clearly states that a lien extends to future advances only if it is noted on the Certificate of Title, or if a new filing is made as to the later advance. Mid–America failed to do either. The parties did not direct the Court to any Missouri cases on point. And this Court could find no other state certificate of title statute that included the future advance language as a requirement for perfection. Since this Court has no guidance from either the Missouri Legislature, or Missouri case law, I am bound by the plain language of the statute. CFCU is perfected as to the lien evidenced by Note # 1. As to the later loans evidenced by Note # 2 and Note # 3, CFCU failed to prove that it perfected its security interest in the collateral that secured those two loans by a notation of its right to make future advances on the Certificate of Title. Mid–America marked Note # 1 "PAID BY RENEWAL," and it offered no evidence to allow me to find there is a balance remaining as to Note # 1. By the terms of Note # 1, debtors would have made the last payment on September 12, 2000. I will, therefore, find that Note # 1 is satisfied, and that any remaining balance on Notes ## 2 and 3 is not secured by a perfected lien on the Truck. I, therefore, will grant the trustee's motion for turnover.

32. Creditor's Ex. # 4.

33. Alvin C. Harrell, *The PEB Study Group Report and Revised Article 9 with Respect to* *Certificate of Title Issues,* **51 Consumer Fin. L.Q.Rep.** 367, 369 (1997).

As agreed by both the Chapter 7 trustee and CFCU at the hearing, the Motions for Sanctions filed by both parties will be denied.

An Order in accordance with this Memorandum Opinion will be entered this date.